**STATE, ex rel. FARLEY, Plaintiff, v. BOARD OF EDUCATION OF THE EUCLID CITY SCHOOL DISTRICT, Defendant**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24594. Decided December 29, 1958.

George S. Womer, for plaintiff.

Paul H. Torbet, Dir. of Law, for defendant.

(HUNSICKER, PJ, of the Ninth District, HORNBECK, J, of the Second District, and PETREE, J, of the Tenth District, sitting by designation in the Eighth District.)

## OPINION

By HUNSICKER, PJ.

This is an original action in mandamus filed in this court by Charles W. Farley, a former teacher in the schools of the city of Euclid, Ohio, herein called "Euclid." In this action, Mr. Farley seeks to compel the Board of Education of the Euclid City School District to grant him a continuing contract of employment as a teacher in the school system.

Charles Farley was first employed as a school teacher by Euclid on September 8, 1952, for the school year 1952-1953. He then held a four-year provisional teacher's certificate, given to him by the Division of Certification of the Department of Education of the State of Ohio (§3319.24 R. C.). The contract by which Mr. Farley was hired is known as a limited contract, as provided for by §3319.11 R. C.

Mr. Farley was re-employed by Euclid on a limited contract basis for the school years 1953-1954, 1954-1955, 1955-1956, 1956-1957. For the school year 1957-1958, he was recommended for a limited contract probationary period as provided for by §3319.11 R. C. He was not employed by Euclid for the school year 1958-1959. It was the failure to grant him

a continuing contract for the school year 1958-1959 that gave rise to this action.

In January, 1956, Mr. Farley made an application to the Department of Education of the state of Ohio for an eight-year professional certificate, as provided for by §3319.25 R. C. The application was marked "certificate granted 9-1-56," and further marked "certificate mailed 2-15-56." (This was according to the custom of the department to date all certificates as of September 1 of each year, although sent to the applicants immediately after they were processed and approved, which was usually a number of months prior to September.)

Mr. Farley said he received this certificate about February 18, 1956, and thereafter placed it in a container or bag known as the "school mail bag," which was a method whereby written communication was maintained between the school where Mr. Farley was teaching and the office of the superintendent of schools for Euclid, herein called "superintendent." No record was kept by Mr. Farley as to the date when he placed this certificate in the "mail bag." No record was found in the office of the superintendent that the certificate was received in the regular course of the delivery of such interoffice communications.

In a memorandum kept by the secretary to the superintendent and directed to him, a statement was made that the professional certificates of Mr. Farley and others were "turned in" to the office of the superintendent after April 23, 1956. This memorandum also stated that Mr. Farley and the others named "should be eligible for a continuing contract for 1957-1958."

Another memorandum made by the secretary to the superintendent, apparently a year later, stated that Mr. Farley and others would be eligible for continuing contracts effective with the school year 1958-1959.

Mr. Farley received and signed a limited contract for the year 1956-1957, and served under that contract for that school year. He knew that it was the same kind of limited contract under which he had previously taught, yet he made no inquiry regarding his status, and he did not inquire as to what had become of his professional certificate, which he said he had sent to the superintendent in February, 1956.

On April 25, 1957, the superintendent sent to Mr. Farley a letter to the effect that, in accord with §4842-8 GC (which was actually §3319.11 R. C.), he, the superintendent, would recommend Mr. Farley for a one-year limited contract with Euclid, for the school year 1957-1958. He further stated that, at the close of that school year, Mr. Farley would be eligible for a continuing contract. He requested Mr. Farley to make an improvement in this teaching, as previously outlined to Mr. Farley by a Mr. McBride. Mr. Farley served under that contract for the school year 1957-1958.

On April 23, 1958, the superintendent informed Mr. Farley, by letter, to the effect that he would not be recommended for a position in Euclid for the school year 1958-1959, and would not be granted a continuing contract as provided for by §3319.11 R. C. This original mandamus action, filed in this court, is the result of the failure of Mr. Farley to secure a teacher's continuing contract with Euclid.

It must be noted that there is no provision in law for a board of education to receive notice, from any source, of the granting of a professional teacher's certificate. There is nothing in the law which requires the teacher-recipient of such certificate to file it with a board of education. We do believe, however, since the teacher is the one who is to benefit by having such a certificate, that the teacher should, if he expects to secure the benefits, see that the professional certificate is filed in the office of the board of education, and he should not rely on others to take it to that board.

We find that Euclid did not have notice of the professional status of Mr. Farley until after April 23, 1956. We further find that Mr. Farley accepted a regular limited contract and performed, under that contract, services as a school teacher without bringing to the attention of the proper authorities that he could claim at least a recommended limited contract for a maximum period of two years.

That portion of the teacher's tenure act (§3319.01 et seq, R. C.), which applies here, §3319.11 R. C., in part, reads as follows:

"Teachers eligible for continuing service status in any school district shall be those teachers, qualified as to certification, who within the last five years have taught for at least three years in the district, and those teachers who, having attained continuing contract status elsewhere, have served two years in the district, but the board of education, upon the recommendation of the superintendent of schools, may at the time of employment, or at any time within such two-year period, declare any of the latter teachers eligible.

"Upon the recommendation of the superintendent that a teacher eligible for continuing service status be re-employed, a continuing contract shall be entered into between the board and such teacher unless the board by a three-fourths vote of its full membership rejects the recommendation of the superintendent. The superintendent may recommend re-employment of such teacher, if continuing service status has not previously been attained elsewhere, under a limited contract for not to exceed two years, provided that written notice of the intention to make such recommendation has been given to the teacher with reasons therefor on or before the thirtieth· day of April, but upon subsequent re-employment only a continuing contract may be entered into.

"A limited contract may be entered into by each board with each teacher who has not been in the employ of the board for at least three years and shall be entered into, regardless of length of previous employment, with each teacher employed by the board who holds a provisional or temporary certificate.

"Any teacher employed under a limited contract is, at the expiration of such limited contract, deemed re-employed at the same salary plus any increment provided by the salary schedule unless the employing board give such teacher written notice of its intention not to re-employ him on or before the thirtieth day of April or thirty days prior to the termination of such teacher's school year, whichever date occurs the earlier. Such teacher is presumed to have accepted such employment unless he notifies the board in writing to the contrary

on or before the first day of June, and a contract for the succeeding school year shall be executed accordingly."

A careful reading of the sections dealing with the employment of teachers (§3319.01 R. C., et seq), shows that, as to teachers who do not have or are not eligible for continuing service status, the superintendent of schools is not required to make a recommendation to the board of education before a limited contract is entered into with one who is hired as a teacher. The board of education enters into the contract with or without a statement from the superintendent of schools, and unless such board notifies a teacher, before the statutory date, of his nonemployment, the teacher is deemed hired on a limited contract for the ensuing school year. The superintendent of schools does not have the authority to hire or fire in such a circumstance. This, in effect, is the holding in State, ex rel. Rutherford, v. Barberton Board of Education, 148 Oh St 242, and the conclusion reached in State, ex rel. Foster, v. Madison Twp. Board of Education, 151 Oh St 413. Our case here is not similar to those cases.

The situation with a continuing contract is different from that involving a limited contract. In the employment of a teacher under a limited contract, there is no exercise of the discretion called for by an official and a recorded recommendation of the superintendent of schools.

Although there is undoubtedly a nomination of the teacher by the superintendent, for a limited contract of employment, he is not required, under the statute (§3319.11 R. C.), to take any official action with reference to that teacher. Where, however, a teacher has met the prerequisites for continuing service status, the superintendent must make a recommendation that such teacher be re-employed in the school system. This recommendation of employment must be accepted, unless the board rejects the recommendation by a three-fourths vote of its full membership.

It is thus seen that there can be no employment of a teacher, under a continuing contract, without a recommendation by the superintendent to that effect made to the board. Mr. Farley was not recommended for a probationary continuing-service contract in 1956-1957, but only for a limited contract, which contract he accepted and performed. Mr. Farley was recommended and notified for a continuing-contract probationary period for the school year 1957-1958, under the statute which provided for such probation period, when Euclid became aware that he had obtained the necessary prerequisite professional certificate and length of service status. This probationary recommendation was not made continuous by recommendation of the superintendent for the next school year, 1958-1959. Mr. Farley was notified by letter, dated April 23, 1958, that he would not be recommended by the superintendent for a continuing-service contract.

Unless Mr. Farley attained continuing-service status when he was re-employed for the school year 1956-1957, a time when he had a professional certificate and the required years of prior service, he cannot now claim the benefit of the statute providing for continuous-service status.

We do not believe he attained this status at that time. First, he did

not notify the proper school authorities that he had the required professional certificate; second, he signed a contract for and performed his duties under a limited contract; third, he did not have the prerequisite recommendation from the superintendent to the board of education that he be hired under a limited contract (for a period not to exceed two years); and fourth, no written notice of the intention to make such a recommendation was given to Mr. Farley, with reasons therefor, on or before April 30, 1956.

Since Mr. Farley does not have the necessary recommendation of the superintendent for a continuing-service contract, he cannot compel the Board of Education of the Euclid City School District to employ him.

The writ sought herein must be denied.

Writ denied.

HORNBECK and PETREE, JJ, concur.